UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRANDON HUERTAS,                    :
          Plaintiff,                :
                                    :
v.                                  :          3:25cv118 (SRU)
                                    :
WARDEN GUADARRAMA,                  :
et al.,                             :
          Defendants.               :

## INITIAL REVIEW ORDER

The plaintiff, Branden Huertas, is an inmate in the custody of the Connecticut

Department of Correction ("DOC").   He has commenced this action *pro se* under 42 U.S.C.

§ 1983 against six individuals who work at DOC's MacDougall-Walker Correctional Institution

("MWCI"): Warden Pedro Guadarrama, Lieutenant Matthews, Correction Officer Burrow,

Correction Officer John Doe 1, Correction Officer John Doe 2, and Correction Officer John Doe

3.   Compl., Doc. No. 1.   Huertas asserts claims for damages and injunctive relief due to

violation of his rights under the United States Constitution while housed as a pretrial detainee at

MWCI.[1]   *Id.*

I will permit some of Huertas's claims to proceed for service.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief

may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

---

[1] Huertas indicates that he was a pretrial detainee at the time relevant to his claims in this action.
*See* Compl., Doc. No. 1, at 2.   The Court takes judicial notice that Huertas was sentenced on
June 26, 2024. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279259.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.   *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.   Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    ALLEGATIONS

During Ramadan in January 2024, Huertas was on a period of mealtime or out-of-cell time when he was instructed by a correctional officer that he could not be in the day room watching television.   Compl., Doc. No. 1, at ¶ 1.   Huertas explained that he was outside of his cell as part of his out-of-cell time provided for under the prison administrative directives, and that he could not sit at a table with other inmates who were eating due to his observation of Ramadan.   *Id.* at ¶ 2.

The officer replied that he would write Huertas a class B ticket for being out of place and/or disobeying a direct order if he did not leave the day room.   *Id.* at ¶ 3.

Huertas proceeded to the officer bubble, where he requested that Correction Officer Burrow call the lieutenant who could support his claim that he was permitted to sit in the day room as part of his out-of-cell time.   *Id.* at ¶ 4.

Correction Officer Burrow contacted Lieutenant Matthews, but lied to Lieutenant Matthews and wrote a "fake report" so that Huertas could be removed from the day room.   *Id.* at ¶¶ 4-5.   After his arrival, Lieutenant Matthews threatened Huertas with mace and physical force, and then escorted him to the Restricted Housing Unit ("RHU") and placed him on in-cell restraints.   Huertas claims that Lieutenant Matthews used another false report to justify his placement on in-cell restraints in violation of prison protocol.   *Id.* at ¶¶ 5-6.

Because he feared for his safety and life, Huertas would not permit any officers to enter his cell.   *Id.*

Huertas's complaint is not entirely clear in places, but he appears to allege that he informed Warden Guadarrama that Officer Burrow fabricated the disciplinary charges against him due to her prejudice against Muslims.   *Id.* at ¶¶ 7-8.   Warden Guadarrama allegedly laughed and threatened to place him on four-point restraints if he did not "downgrade."   *Id.* at ¶¶ 8-9.

After fifty-four hours, Warden Guadarrama threatened Lieutenant Briatico, a correctional captain, and three other correctional officers that they would lose their jobs if they did not violate prison directives to enter his cell and physically remove his restraints.   *Id.* at ¶¶ 9-10.   The correctional staff then removed Huertas's restraints.   *Id.*   During the removal process, the correctional officers injured Huertas's back, causing Huertas pain so that he needed a shot in the arm for relief.   *Id.*

Huertas seeks damages for the fifty-four hours he was placed in in-cell restraints, the injury to his back, and the religious discrimination he suffered during the month of Ramadan.

*Id.* at 5(E).   He also requests a court order for the termination of Lieutenant Matthews, Correction Officer Burrow, and Warden Guadarrama as DOC employees.   *Id.*

### III.    DISCUSSION

Section 1983 of Title 42 provides that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."   "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

#### A.    Individual Capacity Claims Against the Doe Defendants

Claims for monetary damages against state employees in their official capacities are barred by the Eleventh Amendment.   *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").   As a result, to the extent that Huertas seeks damages against any of the defendants, I construe those claims to be brought against the defendants in their individual capacities.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).   That is true with respect to supervisory officials as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under section 1983. "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").

Huertas's complaint does not describe conduct by any of the three Doe Defendants. Thus, I cannot determine that Huertas has stated any plausible claims for damages against any Doe Defendant.   Huertas must investigate the identities of the Doe Defendants and file an amended complaint, within 30 days of this Order, naming the Doe Defendants and pleading specific facts about their involvement in the alleged violations.   If he fails to do so, Huertas' individual capacity claims under section 1983 against the Doe Defendants will be dismissed.

## B.    First Amendment Free Exercise

Next, I construe Huertas's complaint as raising a claim for relief under the First Amendment's Free Exercise Clause. To assess a free exercise claim in the prison context, a court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives."  *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d

Cir. 2023) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)) (cleaned up).    Under

section 1983, a plaintiff must establish liability of a defendant by showing that "an officer-

defendant act[ed] with at least deliberate indifference in depriving an inmate of the ability to

engage in a religious practice."   *Id.* at 129.

In considering whether a prisoner has demonstrated a sincerely held religious belief, the

Court does not "evaluate the objective reasonableness of the prisoner's belief," but considers

only whether the prisoner "sincerely holds a particular belief and whether the belief is religious

in nature."   *Ford v. McGinnis,* 352 F.3d 582, 590 (2d Cir. 2003).

I construe Huertas's allegations to suggest that he is an adherent of Muslim beliefs and

observes the fast of Ramadan.   Huertas's allegations are not easy to discern.   But construed

most broadly, Huertas's complaint indicates that he failed to obey a correctional staff order that

would have resulted in a violation of his religious practices.   For purposes of initial review, I

conclude that Huertas has sufficiently alleged that Officer Burrow's issued a disciplinary ticket

for disobeying an order that infringed upon his sincerely-held religious beliefs.   Thus, I permit

Huertas to proceed against Officer Burrow in her individual capacity on a First Amendment Free

Exercise claim.[2]

## C.    First Amendment Retaliation

_____

[2] Even if Huertas has alleged that he advised Warden Guadarrama about the fabricated
disciplinary charges resulting from Officer Burrow's prejudice against Muslims, Huertas has not
alleged facts to reflect that either Warden Guadarrama or Lieutenant Matthews was aware of his
earlier interaction with correctional staff when he expressed that he was in day room because he
could not sit with inmates during meal times during Ramadan.   Compl., Doc. No. 1, at 4-5.
Accordingly, I conclude the alleged facts do not support a First Amendment Free Exercise
against Warden Guadarrama and Lieutenant Matthews.

Huertas alleges that both Correction Officer Burrow and Lieutenant Matthews issued false disciplinary reports against him.   Falsely accusing an inmate of misconduct does not itself violate the Constitution.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.").[3]   However, a false accusation claim may present a cognizable claim if "the false accusation is based on something more, such as 'retaliation against the prisoner for exercising a constitutional right.'"  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 372 (N.D.N.Y. 2010) (quoting *Boddie*, 105 F.3d at 862).

To state a cognizable retaliation claim, Huertas must allege facts establishing three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)) (internal quotation marks omitted). Huertas's allegations must be non-conclusory.  *See Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (noting that a retaliation claim may not be stated in conclusory terms, but instead must be supported by specific factual allegations).

I first consider whether Huertas has plausibly alleged that Officer Burrow issued the false disciplinary report "in retaliation for [Huertas's] exercise of his constitutional rights."  *Velez v.*

---

[3] A claim of false disciplinary charges may also be cognizable as a Fourteenth Amendment procedural due process claim arising from an inmate's associated disciplinary hearing.  *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974) (inmate's protection against false accusation lies in the procedural due process protections required in the hearing process).   Here, Huertas alleges no facts suggesting that he was denied due process at any hearings.   Thus, he fails to allege facts meeting that exception.

*Burge*, 483 F. App'x 626, 628 (2d Cir. 2012).  Huertas's allegations satisfy the first element

because his religious conduct is protected by the First Amendment.

Regarding the second element, the Second Circuit has defined adverse action as

retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from

exercising his or her constitutional rights."  *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020)

(internal quotation marks and citation omitted).  Whether a particular action is considered

adverse depends on the totality of the circumstances. *See Dawes v. Walker*, 239 F.3d 489, 493

(2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)

(explaining the definition of adverse action "is not static across contexts," but "must be tailored

to the different circumstances in which retaliation claims arise" and "[p]risoners may be required

to tolerate more than public employees, who may be required to tolerate more than average

citizens").

I conclude that Huertas has satisfied the adverse action element by alleging that Officer

Burrow issued him a false disciplinary report resulting in his being placed in restrictive

confinement.  *See McCants v. Vereen*, 2024 WL 5186724, at *4 (D. Conn. Dec. 20, 2024)

(adverse action element satisfied on initial review where plaintiff alleged he was assaulted,

placed in the RHU and issued a false disciplinary report).

Turning to the third element—causation—the Second Circuit has instructed that prisoner

retaliation claims must "be supported by specific and detailed factual allegations, not stated in

wholly conclusory terms."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).  Here,

Huertas's complaint can reasonably be read to allege that Officer Burrow was aware that Huertas

is a Muslim, that Huertas expressed his need to follow the appropriate religious practice

concerning eating meals during Ramadan, and that Officer Burrow wrote a false report in retaliation. Accordingly, I will permit Huertas to proceed on a claim of First Amendment retaliation against Officer Burrow in her individual capacity.

I do not discern a plausible First Amendment retaliation claim against Lieutenant Matthews. Even assuming the complaint's allegations satisfy the first and second elements of the analysis, Huertas has not alleged facts to suggest that Lieutenant Matthews was aware of his religious expression and issued the false disciplinary report with a retaliatory animus. *See Schlosser v. Manuel*, 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where plaintiff had not alleged that the defendant was aware of his protected activity). Accordingly, I must dismiss as not plausible any First Amendment retaliation claim against Lieutenant Matthews.[4]

### D.    Fourteenth Amendment Excessive Force

Because Huertas was a pretrial detainee at the time of the alleged events in January 2024, Huertas's claims concerning correctional staff's use of excessive force are governed by the Fourteenth Amendment, rather than the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015).

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989)) (internal quotation marks omitted). Thus, to state a claim for the use of excessive force, a pretrial detainee must "show only that the force purposely or

---

[4] Likewise, Huertas has not alleged facts to support a claim that Warden Guadarrama was aware of his protected expression concerning his religious needs and, thereafter, took retaliatory action by retaining him on in-cell restraints for fifty-four hours.

knowingly used against him was objectively unreasonable." *Id.* at 396–97.

Courts must be mindful that sometimes use of force is necessary "to preserve internal order and discipline and to maintain institutional security," *Id.* at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)) (internal quotation marks omitted).   But an inmate may still prevail in a use-of-force claim where the force used is "excessive in relation to that purpose." *Id.* at 398 (quoting *Bell*, 441 U.S. at 561) (internal quotation marks omitted).   A plaintiff may thus show either that the actions taken against him "are not rationally related to a legitimate nonpunitive governmental purpose," or that they "appear excessive in relation to" a nonpunitive purpose.   *Id.* (quoting *Bell*, 441 U.S. at 561).

Prison officials can also be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence."   *Abreu v. Bascue*, 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018).   Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."   *Delano v. Rendle*, 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016).

Huertas alleges that he was placed in the RHU and subjected to a prolonged period of in-cell restraints.   The use of restraints "in excess of what was necessary under the circumstances" may rise to the level of a constitutional excessive force violation.   *Mason v. Connecticut Dep't*

*of Correction*, 2022 WL 19341, at *5 (D. Conn. Jan. 3, 2022).   Huertas's allegations suggest

that there was no penological justification for high-level restraints and restrictive conditions

because the disciplinary charges were false.   I therefore permit Huertas to proceed for damages

on his Fourteenth Amendment excessive force claims against Officer Burrow, Lieutenant

Matthews, and Warden Guadarrama, who are all plausibly alleged to have involvement with the

excessive force or failure to prevent misuse of force.

###    E.    Conditions of Confinement

I also consider whether Huertas has alleged any plausible Fourteenth Amendment

violation arising from his placement in the RHU with in-cell restraints for fifty-four hours.   A

pretrial detainee has a constitutional right to be free from conditions of confinement that amount

to punishment, because the government has no right to punish a pre-trial detainee prior to an

adjudication of guilt in accordance with due process of law. *See Bell v. Wolfish*, 441 U.S. 520,

535 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("A pretrial detainee may not be

punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to

conditions of confinement, or otherwise.").   A pretrial detainee may state a substantive due

process claim in two ways, by showing that the defendants were deliberately indifferent to the

conditions of his confinement or by showing that the conditions were punitive.   *Id.* at 34 n.12.

###    a.    Indifference to Health and Safety

A deliberate indifference claim for a pre-trial detainee is governed by the Due Process

Clause of the Fourteenth Amendment.   *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)

(detainees' rights are "at least as great as the Eighth Amendment protections available to a

convicted prisoner.") (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).   A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs: (1) an objective prong, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions."   *Darnell*, 849 F.3d at 29.   With respect to the first prong of a Fourteenth Amendment indifference claim, a plaintiff must allege facts showing that the challenged "conditions, either alone or in combination, posed an unreasonable risk of serious damage to his health, which included the risk of serious damage to physical and mental soundness."   *Id.* at 30.   I must consider the "duration and severity" of the conditions and evaluate them "in light of contemporary standards of decency."   *Id.*

With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."   *Id.* at 35.   Negligence is insufficient to satisfy this component.   *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

I assume for purposes of this initial review that Huertas's placement on in-cell restraints for fifty-four hours constitutes a condition that posed a serious risk of harm to Huertas's health. Although thin, Huertas's allegations are sufficient to support a claim that Defendants ignored an obvious risk of harm to Huertas's health by placing him in in-cell restraints for fifty-four hours.

Accordingly, Huertas may proceed on claims for Fourteenth Amendment indifference to his conditions of confinement against Officer Burrow, Lieutenant Matthews, and Warden Guadarrama in their individual capacities.

### b.    Punitive Conditions

Although a pretrial detainee's confinement in restrictive housing is not considered punitive if that confinement is reasonably related to a legitimate governmental purpose, *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017), the Second Circuit has stated that prison officials violate substantive due process if they "adhere[ ] reflexively to a practice" of placing a pretrial detainee in administrative segregation without "individualized consideration of [the pretrial detainee's] circumstances" and "regardless of [the pretrial detainee's] actual threat, if any, to institutional security."  *Id.* at 57.

Huertas alleges that he was placed in the RHU on in-cell restraints for fifty-four hours on the basis of fabricated charges.   Thus, his allegations raise a question whether such conditions were reasonably related to a legitimate governmental purpose or were punitive.  *See Lawrence v. Zack*, 2024 WL 4116928, at *7 (D. Conn. Sept. 9, 2024) (allegations that inmate had not violated prison rules and was not a gang member but was placed on restrictive status raised a question about whether his conditions were punitive rather than reasonably related to institutional security); *Wilson v. Santiago*, 2020 WL 5947322, at *4 (D. Conn. Oct. 7, 2020) (pretrial detainee placed in segregation may state substantive due process claims if conditions are not reasonably related to legitimate governmental purpose, such as institutional security) (citation omitted).   Defendants may be able to show that Huertas's fifty-four-hour restrictive placement was legitimately related to penological interests.   But for initial pleading purposes,

Huertas has sufficiently raised an inference that his conditions were punitive.   Accordingly, Huertas may proceed for damages against Officer Burrow, Lieutenant Matthews, and Warden Guadarrama for Fourteenth Amendment violation arising from his punitive placement in the RHU on in-cell restraints.

## F.    Verbal Harassment

Huertas alleges that Warden Guadarrama laughed at him and threatened him with placement in four-point restraints.   But it is well settled that verbal harassment and threats absent any appreciable injury does not constitute a violation of any federally protected right and are therefore not actionable under section 1983.   *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (noting "[i]n this Circuit, allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.") (citations omitted); *see also Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (expressly applying the same principle in a Fourteenth Amendment context). Verbal harassment that inflicts psychological pain may rise to the level of a constitutional violation, but the injury must be more than *de minimus.   Cruz-Droz v. Marquis*, 2018 WL 1368907, at *5 (D. Conn. Mar. 16, 2018) ("For harassment claims involving psychological injury, that injury must have been intentionally inflicted and be more than *de minimis.*") (citation omitted); *see also Shabazz v. Pico*, 994 F. Supp. 460, 475 (S.D.N.Y. 1998).

Here, Huertas alleges no facts to support an inference that he suffered appreciable injury as a result of Warden Guadarrama's alleged verbal harassment.   The only injury Huertas complains of is an injury to his back as a result of the removal of his restraints.   I therefore

14

conclude that Huertas has not alleged a plausible Fourteenth Amendment claim to his health or safety arising from verbal harassment.

### G.    Violation of Administrative Directive

Huertas also alleges that the defendants violated prison administrative directives. A prison official's violation of administrative directives is not actionable in a section 1983 suit. *See Fine v. UConn Med.*, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (noting a "defendants' failure to comply with prison regulations or administrative directives" does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." (citing *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011))).

Thus, I dismiss any such claims under 28 U.S.C. § 1915A(b)(1).

### H.    Official Capacity Claims

Huertas's complaint seeks a court order requiring DOC to terminate the employment of Correction Officer Burrow, Warden Guadarrama and Lieutenant Matthews.

A claim for injunctive or declaratory relief may proceed against a defendant in his or her official capacity only to the extent that an ongoing constitutional violation is alleged.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)) ("This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century . . . when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. . . . [t]he doctrine is limited to that precise situation[.]").   Further, a claim for

15

injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

Huertas's allegations describe violations of his rights that occurred in the past. Furthermore, Huertas is no longer housed at MWCI, and therefore cannot proceed for official capacity relief against DOC employees who work at MWCI. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

Accordingly, all of the Huertas's official capacity claims must be dismissed as not plausible.

## IV.    Motions to Appoint Counsel and for Discovery

Huertas has filed three motions to appoint counsel. *See* Doc. Nos. 8, 19, 22. Generally, a plaintiff is not entitled to court-appointed counsel in civil proceedings. The Second Circuit has repeatedly cautioned against the routine appointment of counsel and reiterated the importance of requiring an indigent plaintiff to demonstrate the likely merit of his claims before counsel is appointed. *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 203–04 (2d Cir. 2003; *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). *See also* D. Conn. L. Civ. R. 83.10(c)1. ("Pro bono counsel may be appointed at the discretion of the presiding judge upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice based upon factors such as . . . the apparent merit of the party's claims or defenses.").

The current record consists only of Huertas' complaint.   At this time, the Court is unable to assess the likely merit of Huertas' claims.   Thus, his motions for appointment of counsel are denied without prejudice as premature.   Huertas may refile his motions at a later stage of the litigation.

Huertas also filed a motion for discovery.   *See* Doc. No. 20.   In his motion, Huertas requests specific pieces of evidence.   Huertas' motion is premature.   Upon entering this order, service of Huertas' complaint on the defendants will commence, and discovery will then follow. Moreover, requests for discovery should be served on the defendants and should not be filed on the docket.   Therefore, Huertas' motion for discovery is denied.

## V.    Notice of Retaliation

Finally, on June 27, 2025 Huertas filed a notice of retaliation, doc. no. 24, in which he alleges that, after filing his complaint in this case, he was transferred to Cheshire Correctional Institution, where correctional staff are threatening to take his prescription glasses.   To the extent that Huertas seeks to assert legal claims against Cheshire staff for unlawfully threatening to take away his glasses, he should file a new complaint and name officials at Cheshire as defendants.   To the extent that Huertas seeks to assert additional claims of retaliation against the defendants named in this case, he should file an amended complaint.

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Huertas's individual capacity claims for (1) violation of the First Amendment Free Exercise Clause against Correction Officer Burrow; (2) First Amendment retaliation against Correction Officer Burrow; (3) Fourteenth Amendment excessive force

against Correction Officer Burrow, Lieutenant Matthews and Warden Guadarrama; (4) violation of the Fourteenth Amendment violation based on indifference to Huertas's conditions of confinement against Correction Officer Burrow, Lieutenant Matthews and Warden Guadarrama; and (5) violation of the Fourteenth Amendment based on punitive conditions of confinement against Correction Officer Burrow, Lieutenant Matthews and Warden Guadarrama.

Huertas shall investigate the identities of the Doe Defendants and file an amended complaint, within 30 days of this Order, naming the Doe Defendants and pleading specific facts about their involvement in the alleged violations.   If he fails to do so, Huertas' individual capacity claims under section 1983 against the Doe Defendants will be dismissed.

All other claims, including official capacity claims, are DISMISSED without prejudice under 28 U.S.C. § 1915A.

I afford Huertas one opportunity to file an amended complaint, within 30 days of this Order, if he believes in good faith that he can correct the deficiencies identified in this Initial Review Order.   Huertas is advised that any amended complaint will completely replace his prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

(2) The clerk shall verify the current work addresses for Correction Officer Burrow, Lieutenant Matthews and Warden Guadarrama with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.   If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S.

Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order.   Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Huertas changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the Court.   Failure to do so can result in the

dismissal of the case.   Huertas must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Huertas has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify the defendants or defense counsel of his new address.

      **SO ORDERED.**

      Dated at Bridgeport, Connecticut this 7th day of July 2025.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge
