UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRANDEN HUERTAS, | : | 3:25cv118 (JCH) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN GUADARRAMA, | : | DECEMBER 29, 2025 |
| et al., | : | |
|     Defendants. | : | |

## INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

The plaintiff, Branden Huertas ("Mr. Huertas"), is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution ("Cheshire"). On January 22, 2025, Mr. Huertas commenced this action pro se under 42 U.S.C. § 1983 of the U.S. Code against six individuals who work at DOC's MacDougall-Walker Correctional Institution ("MWCI"): Warden Pedro Guadarrama, Lieutenant Matthews, Correction Officer Burrow, Correction Officer John Doe 1, Correction Officer John Doe 2, and Correction Officer John Doe 3.[1] See Compl., Doc. No. 1.[2]

After initial review, the court permitted Mr. Huertas to proceed on several but not all of his claims. See Initial Review Order ("IRO"), Doc. No. 25. The court allowed Mr. Huertas the

---

[1] An executed waiver confirms the spelling of Lt. Matthews last name. Waiver, Doc. No. 29.

[2] The court takes judicial notice that Mr. Huertas was sentenced on June 26, 2024, with a release date of January 9, 2026. See Connecticut State Department of Correction Inmate Information re: Branden Huertas, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279259. See also, Young v. Choinski, 15 F. Supp. 3d 172, 178, n.2 (D. Conn. 2014) (court taking judicial notice of information related to terms of plaintiff's incarceration).

1

opportunity to file an amended complaint to correct the deficiencies of his claims as identified in the court's Initial Review Order. Id. at 18.

Mr. Huertas has now filed an Amended Complaint against Warden Guadarrama, Lieutenant Matthews, and Correction Officer Burrow. See Am. Compl., Doc. No. 35. Thus, under 28 U.S.C. § 1915A, the court considers whether Mr. Huertas has alleged any plausible claims for relief in his amended complaint.

### I.    STANDARD OF REVIEW

The Prison Litigation Reform Act requires federal courts review complaints brought by prisoners seeking redress against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Under 28 U.S.C. § 1915A(b), the court must review the prisoner complaint and identify cognizable claims or dismiss the complaint, or any portion thereof, if the complaint is: (1) frivolous, malicious, or fails to state a claim upon which relief can be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons,

470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## II.   ALLEGATIONS

On April 7, 2024, during the month of Ramadan, Mr. Huertas was on a period of mealtime, or out-of-cell time, when he was instructed by a "rookie" correctional officer that Mr. Huertas could not be in the day room watching television.  Am. Compl., Doc. No. 25, at ¶ 1. Mr. Huertas explained that he could not sit at a table with other individuals eating because he was observing Ramadan, and that he was on out-of-cell-time under the prison administrative directives.  Id. at ¶ 2.  The correctional officer replied that he would write Mr. Huertas a Class B ticket for being out of place and/or disobeying a direct order if he did not leave the day room. Id. at ¶ 3.

Mr. Huertas proceeded to the main officer bubble, where he requested that Correction Officer Burrow ("C.O. Burrow") call Lieutenant Matthews so that the rookie correctional officer could be advised that Mr. Huertas was permitted to sit in the day room as part of his out-of-cell time.  Id. at ¶ 4.  However, C.O. Burrow had Mr. Huertas removed from the unit, lied to Lieutenant Matthews, and wrote a "fake incident report."  Id.  Immediately following his arrival, Lieutenant Matthews threatened Mr. Huertas with mace and physical force after speaking to C.O. Burrow.  Lieutenant Matthews then escorted Mr. Huertas to the Restricted Housing Unit ("RHU.")  Id. at ¶¶ 4-5.  Lieutenant Matthews fabricated reports in order to justify placing Mr. Huertas in segregation in in-cell restraints, in violation of prison protocol.  Id. at ¶ 5.

While in RHU, Mr. Huertas feared for his safety and life and did not permit any officers to enter his cell unless Warden Guadarrama threw out the fabricated infractions resulting from

C.O. Burrow's prejudice against Muslim inmates. Id. at ¶ 6. Though not entirely clear in the amended complaint, Mr. Huertas appears to allege that he made Warden Guadarrama aware of the fabricated infractions resulting from C.O. Burrow's prejudice, and that Warden Guardarrama responded by laughing and threatening to upgrade Huertas to a four-point restraint if he refused to "downgrade." Id. at ¶¶ 7-8.

After fifty-four hours of Mr. Huertas being restrained, Mr. Huertas alleges that Warden Guadarrama threatened Lieutenant Briatico, Captain Slater, and other correctional officers that they would lose their jobs if they did not violate prison directives to enter Mr. Huertas's cell and physically remove his restraints.[3] Id. at ¶¶ 8-9. During the removal process, the correctional staff injured Mr. Huertas's back, causing him pain which required that Mr. Huertas receive a shot in the arm for relief. Id. at ¶ 9.

Mr. Huertas seeks damages for the fifty-four hours he was placed in in-cell restraints, the injury to his back, and the abuse he suffered during the month of Ramadan.[4] Id. at 5(E). He

---

[3] It is not entirely clear from the face of the allegations why Warden Guadarrama "threatened" the correctional officers to enter Mr. Huertas' cell and what protests, if any, the correctional officers expressed against entering the cell during Mr. Huertas' period of restraint.

[4] Mr. Huertas has not alleged facts to reflect that any of the three named defendants were involved with the restraint removal resulting in the injury to his back. Thus, Mr. Huertas may not seek damages on any claim against defendants under section 1983 related to his back injury incurred during restraint removal. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991); see also Tangreti v. Bachman, 983 F.3d 609, 620 (2d Cir. 2020) A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983. "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had." Id.

also requests a court order for the termination of Lieutenant Matthews, C.O. Burrow, and Warden Guadarrama as DOC employees.  Id.

### III. DISCUSSION

On prior initial review, the court determined that Mr. Huertas could proceed on his individual capacity claims for (1) violation of the First Amendment Free Exercise Clause against CO Burrow; (2) First Amendment retaliation against CO Burrow; (3) Fourteenth Amendment excessive force against CO Burrow, Lieutenant Matthews, and Warden Guadarrama; (4) Fourteenth Amendment violation based on indifference to Mr. Huertas' conditions of confinement against CO Burrow, Lieutenant Matthews, and Warren Guadarrama; and (5) Fourteenth Amendment violation based on punitive conditions of confinement against CO Burrow, Lieutenant Matthews, and Warden Guadarrama.  IRO at 17-18.

However, Mr. Huertas had not alleged plausible claims under section 1983 for damages against the three Doe Defendants.  Id. at 5.  Nor did his allegations support a claim of First Amendment retaliation against Lieutenant Matthews and Warden Guadarrama.  Id. at 9.  In addition, the court explained that Mr. Huertas had not alleged facts sufficient to support an inference of verbal harassment of a constitutional dimension, and that violations of prison rules and administrative directives do not give rise to plausible claims under section 1983.  Id. at 14-15.  Finally, the court dismissed Mr. Huertas's requests for official capacity relief because his allegations described only violations of his rights that occurred in the past, rather than any ongoing violations, and because his requests for official capacity relief were moot as he was no longer housed at MacDougall-Walker Correctional Institution.  Id. at 14-16.

Mr. Huertas has not named any Doe defendants in his Amended Complaint.  The factual

5

allegations in Mr. Huertas's Amended Complaint are essentially identical to his original Complaint. Thus, the court does not alter its analysis of Mr. Huertas's claims of First Amendment Free Exercise Clause violation and First Amendment retaliation.

The court instead focuses its review of Mr. Huertas's claims regarding excessive force and conditions of confinement as he now asserts that the alleged incidents occurred on April 7, 2024, while he was a convicted or sentenced inmate. Am. Compl. at ¶ 1; Part B.2.[5] A plaintiff's status as either a convicted prisoner or a pretrial detainee dictates whether his claim of excessive force or deliberate indifference is analyzed under the Eighth or Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017); Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). Thus, the court now considers whether Mr. Huertas has alleged any plausible Eighth Amendment, rather than Fourteenth Amendment, violations arising from the use of excessive force and the conditions of his confinement. The court incorporates from its prior Initial Review Order the general legal standards applicable to claims for damages brought under section 1983. IRO at 4-5.

---

[5] The court notes that Mr. Huertas, in his Amended Complaint, indicates that he is a "convicted and sentenced state prisoner" and "convicted and sentenced federal prisoner." See Am. Compl. at Part B.2. In his original Complaint, Mr. Huertas alleged that the incident at issue took place in January 2024, during which time he identified his status as "other: pretrial, sentenced federal." See Compl. ¶ 1; Part B.2.

It is not clear to the court whether Mr. Huertas indicated his status as "convicted sentenced state prisoner" in the Amended Complaint to reflect his status as of the time he filed the Amended Complaint on September 2025 or if Mr. Huertas intended to reflect his detention status as of the time of the alleged incident, in April 2024.

As the court notes, Mr. Huertas' status as a pretrial detainee or as a convicted or sentenced inmate determines whether Mr. Huertas' claims proceed under either the Fourteenth or Eighth Amendment respectively. The court allowed Mr. Huertas to proceed on his Fourteenth Amendment Excessive Force and Conditions of Confinement claims in its Initial Review Order. See IRO 9-13 (25-cv-118-SRU). Specifically, the court allowed Mr. Huertas' Conditions of Confinement claim to proceed under a theory of both deliberate indifference to health and safety and a theory of punitive conditions in violation of his Fourteenth Amendment rights. Id. at 11-14.

The court now allows his Excessive Force and Conditions of Confinement claims to proceed under the Eighth Amendment based on his alleged status as a sentenced inmate. However, the court does not allow Mr. Huertas to assert his Conditions of Confinement claim under a theory of punitive conditions, because no such theory

### A. Eighth Amendment Excessive Force

To state a claim for use of excessive force in violation of the Eighth Amendment, Mr. Huertas must allege facts establishing both objective and subjective components. See Sims v. Artuz, 230 F.3d 14, 20–21 (2d Cir. 2000). "This objective component is 'contextual and responsive to contemporary standards of decency.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). In the context of excessive force, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," regardless of "whether or not significant injury is evident." Hudson, 503 U.S. at 9. "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Harris v. Miller, 818 F.3d 49, 63 (2d Cir. 2016) (internal citations and quotation marks omitted).

Prison officials can also be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." Abreu v. Bascue, 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Delano v. Rendle, 2016 WL

---

is recognized under the Eighth Amendment. See infra note 7. The court permits Mr. Huertas to amend his Complaint to reflect his detention status at the time of the alleged incident in April 2024 if the Amended Complaint does not presently reflect that status accurately.

7

4146476, at *11 (N.D.N.Y. July 12, 2016), report and recommendation adopted, 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (internal citations omitted).

Mr. Huertas alleges that he was placed in the RHU and subjected to a prolonged period of in-cell restraints. The use of restraints does not violate the Eighth Amendment unless it totally lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. See Delgado v. Bezio, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011). Therefore, to establish a violation arising under the Eight Amendment, "an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." Id. (internal citations omitted).

Mr. Huertas' allegations support the inference that there was no penological justification for high-level restraints and restrictive conditions as the disciplinary charges were false. For purposes of Initial Review, the court concludes that Mr. Huertas' allegations are sufficient to support an inference that the alleged high level of restraint imposed on him exceeded the amount of force necessary to restore order and, thereby, lacked a legitimate safety or security justification. See Sanchez v. Bell, 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation); Davis v. Rinaldi, 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement under in-cell restraints without a legitimate safety or security basis).

Thus, Mr. Huertas may proceed for damages on his Eighth Amendment excessive force

claims against Officer Burrow, Lieutenant Matthews, and Warden Guadarrama, who are all plausibly alleged to have had personal involvement in the use of excessive force or failure to prevent the misuse of force.

### B. Eighth Amendment Conditions of Confinement

The court also considers whether Mr. Huertas has alleged any plausible Eighth Amendment violation arising from the conditions of his confinement, specifically his placement in the RHU in in-cell restraints for fifty-four hours. The court turns first to Mr. Huertas' claim of deliberate indifference related to the conditions of his confinement in violation of the Eighth Amendment.

Prison conditions can themselves constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." Farmer v. Brennan, 511 U.S. 825, 836 (1994). To state an Eighth Amendment claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate (1) that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety, id. at 834; Rhodes v. Chapman, 452 U.S. 337, 347 (1981), and (2) the defendant acted with a subjectively reckless state of mind akin to criminal recklessness. Farmer, 511 U.S. at 839–40.

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. See Wilson v. Seiter, 501 U.S. 294, 304 (1991); DeShaney v. Winnebago Cty. Dep't

of Soc. Servs., 489 U.S. 189, 200 (1989); Rhodes, 452 U.S. at 348.  Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example a low cell temperature at night combined with a failure to issue blankets."  See Wilson, 501 U.S. at 304.

As for the subjective element, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently.  Mr. Huertas must allege that the defendants were actually aware of a substantial risk that he would be seriously harmed if they did not act.  See, e.g., Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013); Hilton v. Wright, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam).  "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious."  Spavone, 719 F.3d at 138.

As the objective component is the same under both the Eighth and Fourteenth Amendments, see Darnell, 849 F.3d at 30, the court assumes for purposes of this Initial Review that placement in in-cell restraints for fifty-four hours constitutes a condition that posed a serious risk of harm to Mr. Huertas's health.  See IRO at 12.  For initial pleading purposes, Mr. Huertas's allegations suffice to support an inference that C.O. Burrow, Lieutenant Matthews, and Warden Guadarrama acted with conscious disregard of an obvious serious risk of harm to Mr. Huertas' health by placing him in in-cell restraints for fifty-four hours.

Accordingly, Mr. Huertas may proceed on claims for Eighth Amendment violation for deliberate indifference to his conditions of restrictive confinement against Officer Burrow,

Lieutenant Matthews, and Warden Guadarrama in their individual capacities.[6, 7]

## ORDERS

The court enters the following orders:

(1) The case shall proceed on Mr. Huertas's individual capacity claims for (1) First Amendment Free Exercise Clause violations against Correction Officer Burrow; (2) First Amendment retaliation against Correction Officer Burrow; (3) Eighth Amendment excessive force against Correction Officer Burrow, Lieutenant Matthews and Warden Guadarrama; and (4) Eighth Amendment violation based on deliberate indifference to Mr. Huertas' conditions of confinement against C.O. Burrow, Lieutenant Matthews, and Warden Guadarrama.

All other claims, including official capacity claims, are DISMISSED without prejudice under section 1915A of title 28 of the U.S. Code.

---

[6] Mr. Huertas's allegations do not suggest that he suffered any appreciable injury from any verbal harassment including Warden Guadarrama laughing at him or threats of force from Lieutenant Matthews and Warden Guadarrama as required to support violation of either the Fourteenth or Eighth Amendment. See Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); see also Williams v. Dubray, 557 F. App'x 84, 86-87 (2d Cir. 2014) (expressly applying the same principle in a Fourteenth Amendment context).

Accordingly, Mr. Huertas has not alleged a plausible Eighth Amendment claim arising from any alleged verbal harassment.

[7] In this court's original IRO, the court allowed Mr. Huertas to proceed on his damages claim for punitive conditions of confinement resulting from his segregation and placement in in-cell restraints for fifty four hours based on fabricated charges. See IRO at 13-14. However, that analysis turned on case law concerning a pretrial detainee's confinement under the Fourteenth Amendment.

As stated in this Order, supra page 6, courts analyze the confinement conditions of a prisoner, rather than those of a detainee, under the Eighth Amendment rather than the Fourteenth Amendment. No analogue exists under the Eighth Amendment for analyzing whether a plaintiff's conditions of confinement are punitive because a prisoner has had an adjudication of guilt in accordance with due process of the law. Bell v. Wolfish, 441 U.S. 520, 535, (1979). For that reason, Mr. Huertas cannot proceed on an Eighth Amendment violation theory related to whether the conditions of his confinement were punitive.

(2) Counsel has appeared for Lieutenant Matthews and Warden Guadarrama in their individual capacities. The court notes that an electronic summons was issued to Correction Officer Burrow on September 11, 2025, directing an answer due by October 4, 2025.

As that date is now passed without an answer, the court concludes that Mr. Huertas is entitled to the court's assistance in identifying Correction Officer Burrow's service address.  See Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997); Warren v. eBay, Inc., 2022 WL 2191752, at *1 (S.D.N.Y. June 17, 2022) (stating that under Valentin, "a *pro se* litigant is entitled to assistance from the district court in identifying a defendant or a defendant's service address.") The Amended Complaint contains sufficient information to enable the DOC Office of Legal Affairs to identify the service address for C.O. Burrow.  **Thus, the court directs Director Nancy B. Canney or her designee to provide a Notice providing the appropriate service address for Correction Officer Burrow.**  The DOC Office of Legal Affairs shall file this Notice on or before **January 15, 2026**.   To the extent the DOC Office of Legal Affairs believes that the Notice should be sealed, DOC may file an accompanying motion to seal stating the clear and compelling reasons in favor of sealing the information for serving Correction Officer Burrow.   D. Conn. L. Civ. R 5(e).

(3) The Clerk shall mail a courtesy copy of Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within thirty days of the date of this Initial Review Order.   If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional affirmative defenses

12

permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Huertas changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Huertas has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

**SO ORDERED** at New Haven, Connecticut this 29th day of December, 2025.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge